IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION



| | | |
|---|---|---|
| L. GODFREY GARNER | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION 3 11-cv-127 TSL MTP |
| | § | |
| MISSION ESSENTIAL PERSONNEL, | § | (JURY TRIAL REQUESTED) |
| L.L.C. | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

This is an action under the Age Discrimination in Employment Act for redress of employment discrimination and retaliation.

### Jurisdiction and Venue

1) This court has jurisdiction over this action pursuant to pursuant to 28 U.S.C. §§ 1331, 1343; 29 U.S.C. § 626; and, 42 U.S.C. §§ 1981(a). This action properly lies in the Jackson Division of the United States District Court, Southern District of Mississippi.

### Parties

2) Plaintiff L. Godfrey Garner is a male, of more than forty years of age, and a resident of Edwards, Mississippi. He was employed by the defendant Mission Essential Personnel, L.L.C. ("MEPS") in Afghanistan from December 2009 until May 2010. He was sixty-three (63) years of age at the time of the acts complained of below.

3) Defendant Mission Essential Personnel, L.L.C. is an "employer" within the meaning of Age Discrimination in Employment Act, and is subject to suit under all of the claims alleged herein.

Facts

4)  Plaintiff contracted in October 2009 with a company named Harding Security Associates to provide support for the intelligence and counter-intelligence operations of the United States Army in the country of Afghanistan. Harding was a subcontractor for the Defendant in this action, Mission Essential Personnel, which assigned him to work at the Bagram Air Base, providing human intelligence and counter-intelligence support to the U. S. Army. Shortly after arriving in Afghanistan, Garner was selected by the 82nd Airborne Division command as senior counterintelligence supervisor, responsible for coordinating civilian/military efforts throughout the country.

5)  Although Garner received commendations from the U. S. military for his work in coordinating human intelligence in-country, he was subjected to harassment by his MEP supervisor, Rick Hoppe. Hoppe informed Garner that he was too old to handle the job he was in; ordered that Garner would be transferred to a distant outpost; and, ordered that he be replaced with a younger agent.

6)  Garner wrote to Hoppe, stating that although he would comply, he objected to the statement that he was too old to handle his responsibilities and requested that he be provided with a detailed statement of his "shortcomings" and would forward his complaint to the program manager for legal action.

7)  Garner also informed his military counter-part of his impending transfer. In response, the 82nd Airborne Division command intervened with MEP and demanded that the transfer should be rescinded, and Garner should remain in place.

8)  Following this reversal of his effort to transfer Garner, Hoppe began a campaign of harassment and belittlement of Garner in retaliation for his complaint in

2

opposition to his illegal age-based actions. Younger agents that Garner was in charge of training and supervising, following the lead of Hoppe, began to make jokes about his age and leadership ability. Hoppe attempted again, unsuccessfully, to bring in a younger agent to assume Garner's job responsibilities. This harassment was so severe and interfered with Garner's capacity to carry out his duties that the U. S. Army notified MEP that Hoppe should not have any further communication with Garner unless it came through the Army command.

9)   After Garner notified his managers at Harding Security Associates of the age discrimination to which he was being subjected, he believes that Harding contacted MEP and asked for assistance in investigating his complaint but MEP never responded. Garner also has cause to believe that MEP informed the U. S. Army that Harding had determined that his complaint was unfounded and had dropped the investigation, which was not true.

10)   Despite these efforts, the campaign to undermine Garner continued and created disruption in the effectiveness of mission operations. These actions by Hoppe and MEP were wanton and willfully carried out for the purpose of demeaning and damaging Garner's reputation, and undermined his efforts to provide essential military intelligence to the U. S. Army and its civilian and native clients in the Afghanistan war zone. This willful and wanton conduct was outrageous and intolerable in creating great emotional distress and mental strain for Garner who knew that the lives of military personnel and civilian agents were dependent on his ability to provide support to their intelligence missions in the field.

11)   Faced with the knowledge that the distrust and disruption generated by

Hoppe and MEP could result in extreme danger to the safety and lives of military, civilian and native personnel; Garner was unable to continue to work under the emotional strain and moral dilemma that the environment created by MEPS placed the lives of others at risk. He was constructively terminated when he resigned his position under duress in May, 2010.

12) Plaintiff filed a complaint of age discrimination and retaliation with the Equal Employment Opportunity Commission on or about May 28, 2010; and, timely files this action within ninety days of receipt of a right to sue notice on December 7, 2010.

First Cause of Action
(Age Discrimination in Employment)

The Plaintiff realleges and incorporates by reference paragraphs one through twelve above as though fully set forth herein.

13) The Plaintiff has been the victim of age discrimination in violation of the ADEA, 29 U.S.C. § 621 *et. seq.* in that the Defendant subjected him, at the age of 63, to discrimination and unequal treatment in employment for which he was well qualified by training, experience, and performance, and attempted to replace him with someone less than forty years of age with lesser qualifications while forcing him to accept a transfer or be terminated.

14) This is an action to redress grievances resulting from acts of Defendant, its agents, servants, and employees committed with respect to Plaintiff's employment and for a permanent injunction restraining Defendant from maintaining a policy and practice of harassing and discriminating against the Plaintiff and other persons similarly situated on account of age. Younger employees were not treated to this discrimination in the terms of their employment.

15) As a proximate result of Defendant's unlawful intentional discrimination, Plaintiff suffered different terms and conditions of employment than his younger co-workers, including but not limited to threats of transfer and termination of employment; and has been caused to suffer (1) the loss of income and benefits from the date of his constructive termination to the present; (2) the loss of future income and benefits; and, (3) damage to his ability to secure employment of comparable pay, responsibilities, and advancement opportunities.

16) The actions of the Defendant in discriminating against the Plaintiff have been and continue to be willful in nature.

17) The Plaintiff seeks declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front pay, interest, liquidated damages, costs, attorneys' fees, and any and all such other relief the trier of fact may assess.

Second Cause of Action
(Retaliation)

Plaintiff incorporates by reference each and every allegation contained in paragraphs one through seventeen as if fully rewritten herein and further states:

18) Plaintiff, by his actions in complaining of and/or making charges of discrimination and otherwise, opposed unlawful discriminatory practices by the Defendants. Defendants retaliated against Plaintiff with respect to the terms, conditions and privileges of employment because of his opposition to these unlawful practices in violation of 29 U.S.C. §621 *et seq.*, for which Defendant is liable.

19) As a result of the Defendant's conduct set forth above, Plaintiff is entitled to equitable and declaratory relief, damages for emotional and mental distress, and reasonable attorney's fees and costs.

20) Additionally, Plaintiff states that Defendant acted intentionally, maliciously, willfully, wantonly and recklessly and in conscious disregard of his rights in treating him on the basis of his age; and for such conduct, Defendant is liable for punitive damages.

21) Plaintiff has duly complied with the requirements of Age Discrimination in Employment Act and has filed his action within 90-days of receipt of his notice of right to sue from the EEOC, and has otherwise performed all conditions precedent to the maintenance of this action.

Third Cause of Action
(Intentional Infliction of Emotional Distress/Outrage)

Plaintiff incorporates by reference each and every allegation contained in paragraphs one through twenty-one as if fully rewritten herein and further states:

22) As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damage to his reputation and extreme mental anguish and emotional distress.

23) Defendant's confrontational, demeaning, and embarrassing conduct constituted a mental assault upon Plaintiff and exceeded all bounds of decency within the community. As a direct and proximate result of Defendant's wrongful and outrageous conduct, Plaintiff has suffered extreme mental anguish and emotional distress.

24) Defendant's misconduct occurred with wanton and reckless disregard of and for Plaintiff's rights.

25) The acts of Defendant were malicious, intentional, willful, and in reckless disregard for the rights of Plaintiff. Because of the malicious and wrongful conduct of Defendant, Plaintiff is entitled to an award of punitive damages, pre-judgment interest,

and attorney fees.

26) Alternatively, Defendant knew or should have known that this conduct would cause Plaintiff to suffer damage to his reputation and extreme mental anguish and emotional distress, and was negligent in causing same. Plaintiff is therefore entitled to an award of damages under the law.

## Prayer for Relief

WHEREFORE, the Plaintiff prays that Defendant, upon a trial by jury, be adjudicated to have violated his statutory rights and that he be awarded (i) appropriate damages to compensate him for any and all back pay and other benefits, including but not limited to reinstatement, promotions, transfers, and any other appropriate relief that the plaintiff is due in law or equity as a result of Defendant's violation of his rights; (ii) appropriate "compensatory damages" as allowed by federal and/or state law; (iii) liquidated and punitive damages as to each count in an appropriate amount as determined by the jury; (iv) that the Defendant be permanently enjoined from continuing these unlawful practices; (v) reasonable costs and attorney's fees; and (vi) any and all other relief to which he may be entitled in law or in equity.

A TRIAL BY JURY IS HEREBY REQUESTED.

Respectfully submitted this 1 day of March 2011.

_____
JIMMY JACOBS (JAC051)
Attorney for Plaintiff
4137 Carmichael Rd, Ste 100
Montgomery, Alabama 36106
(334) 215-1788

LEAD COUNSEL FOR PLAINTIFF
PENDING ADMISSION PRO HAC VICE

7

/s/ Steve Brandon
_____
Stephen A. Brandon (MB #8655)
**COUNSEL FOR PLAINTIFF**

Sykes & Brandon
578 Lakeland East, Suite A
Flowood, Mississippi  39232
(601) 957-5500
Facsimile:  (408) 701-9827
Email:  *steve@sykesandbrandon.com*