```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION
```

L. GODFREY GARNER                                          PLAINTIFF

VS.                              CIVIL ACTION NO. 3:11CV127TSL-MTP

MISSION ESSENTIAL PERSONNEL, L.L.C.                        DEFENDANT


<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of defendant Mission Essential Personnel, L.L.C. for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff L. Godfrey Garner has responded to the motion, and the court, having considered the memoranda and submissions, together with attachments, submitted by the parties, concludes that the motion should be granted in part and denied in part, as follows.

Plaintiff L. Godfrey Garner filed this action against his former employer Mission Essential Personnel, L.L.C. (MEP) setting forth federal claims for discrimination, retaliation and constructive discharge under the Age Discrimination in Employment Act of 1967, § 4(a), 29 U.S.C. § 621, *et seq.* (ADEA), and a state law claim for intentional infliction of emotional distress.  MEP seeks summary judgment on all of these claims, contending Garner cannot establish a <u>prima</u> <u>facie</u> case on any of his federal claims and that his proof fails to establish the kind of outrageous

conduct required to support his state law claim for intentional infliction of emotional distress.

Plaintiff claims that he was subjected to age discrimination by MEP when his supervisor threatened to transfer him from a supervisory position at a central location to an inferior nonsupervisory position at an outpost.  The court readily concludes that MEP is entitled to summary judgment on this claim based on the undisputed material facts.  Relative to this claim, the record evidence establishes that in the fall of 2009, Garner, a retired army veteran with experience working with civilian defense contractors providing intelligence support to the United States military in the Afghanistan war theater, was hired by Harding Security Associates to work as a senior counter-intelligence agent for MEP on a U.S. Department of Defense contract awarded to MEP for counterintelligence support in Afghanistan.  At the time, Garner was 62 years of age.  Garner was assigned to work with the U.S. Army's 82nd Airborne's senior counterintelligence (CI) command led by Chief Warrant Officer (CWO) Earl Ivory.  Shortly after Garner's arrival in Afghanistan, CWO Ivory tapped him to serve as Lead for Operational Control Team (OCT)-East at Bagram Air Base.  In this position, Garner worked with Ivory to establish a framework for the civilian CI teams to operate, designating them to assume responsibility for all of the lower-end CI functions in order to free the Army to handle more serious CI-related functions.

After Garner and the initial CI units arrived in Afghanistan, Rick Hoppe was assigned to be MEP's contract project manager. Hoppe worked primarily from his home in Virginia and communicated with MEP personnel in Afghanistan mainly through emails. On January 19, 2010, Hoppe sent an email to Garner advising that Hoppe had decided to move Garner from his position as OCT-East Lead to a position as a counterintelligence agent at Forward Base Fenty, a more austere and hostile assignment that did not include any leadership function. Hoppe proposed to move Dan Stanford, a significantly younger MEP employee, from Forward Base Fenty into Garner's Lead position at Bagram. In this email, Hoppe wrote:

> It's not working out. You are working too many hours, I have too few Seniors so that I can't send one to support you, and you and I don't work together very well. You are feeling it and so am I. I see symptoms of overload. You and I both are too old to work under that level of overload for long.

Garner responded that he would comply but requested both a written explanation as to the claimed inadequacies in his job performance and clarification as to how his age had adversely affected his performance. Garner sent a carbon copy of his response email to Hoppe's superior and to CWO Ivory. In his reply, Hoppe did not offer any explanation as to putative performance deficiencies or the effect of Garner's age on his performance. Instead, Hoppe wrote that Garner should not want anything in writing because "[w]riting can follow you," (a statement which Garner perceived as a threat). Ultimately, CWO

3

Ivory intervened, demanding on behalf of the military that Garner not be transferred.  As a result, the proposed transfer was halted and Garner remained as OCT-East Lead, at the same pay, until April 2010, when he resigned.

To establish a *prima facie* case of age discrimination, Garner must show that

> (1) he was a member of a protected class-those persons over the age of forty; (2) he was qualified for the position that he held; (3) *he suffered an adverse employment action*; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.

<u>Berquist v. Washington Mut. Bank</u>, 500 F.3d 344, 349 (5th Cir. 2007) (emphasis added) (citing <u>Rachid v. Jack In The Box, Inc.</u>, 376 F.3d 305, 309 (5th Cir. 2004)).  Here, while Hoppe proposed to transfer Garner, the transfer was merely contemplated and never consummated.  As a result, Garner's employment status never changed, and neither did his benefits or responsibilities.  Thus, Garner cannot demonstrate that he suffered an adverse employment action.  <u>See</u> <u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 559 (5th Cir. 2007) (stating that for discrimination claims, "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting or compensating") (internal quotation and citation omitted).

Garner contends that after he complained of age discrimination, MEP and Hoppe engaged in a constant campaign of retaliation which ultimately led to his resignation under duress.

4

He states he was subjected to constant interference in carrying out his leadership functions and received false complaints for alleged incidents of not performing his duties, and for which other OCT Leads were not reprimanded.  Specifically, he claims he received daily emails from Hoppe which not only criticized his administrative reports but also directed him to take actions for which he lacked authority, thus placing him in positions which were antagonistic to CWO Ivory.  Garner testified that dealing with or refuting the issues raised in Hoppe's emails took several hours of his time each day, which impeded his ability to do his job effectively.  Garner testified that in one instance, Hoppe directed that Garner advise his subordinates in Afghanistan that their pay would be withheld if they failed to complete their time cards, and yet when Garner complied with Hoppe's directive, he was called to task for doing so by Hoppe and Hoppe's superior.  In another instance, Hoppe, via email, purported to hold Garner accountable for a mix-up involving linguists which were deployed but should not have been because they did not have the proper clearance, a situation over which Garner had no control.  When Garner began the process of recalling the linguists, he found himself at odds with the Army, which did not want to lose the use of the linguists despite their lack of clearance.

     According to Garner, Hoppe's in-country manager, Matt Jennings, joined the campaign of harassment and like Hoppe, sent emails criticizing Garner in both his administrative and operational capacities and, like Hoppe, directed him to take actions which seemed inconsistent with his authority and placed

5

him in a position which was antagonistic to CWO Ivory.  In one such instance, according to Garner, Jennings countermanded a decision that Garner had made regarding the transfer of two of his team members to another location to do a short-term function.  Eventually, in April 2010, CWO Ivory took up Garner's cause, writing to MEP to complain of what he contended was MEP's continued harassment of Garner.  However, despite having Ivory's support, Garner concluded in April 2010 that since he had evidently become the target of a campaign of retaliation, he could no longer live with the prospect that lives were being placed in danger and the military mission was being undermined by his continued presence in Afghanistan, and therefore he made the decision to resign and informed MEP that he would not return to the contract following his planned leave in early May 2010.  According to Garner, Hoppe's actions "placed [me] in an extreme state of fear and apprehension for [my] safety as well as the safety of others who were relying on me."

To establish a *prima facie* case of retaliation, Garner must show that: (1) he participated in a protected activity; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the materially adverse action.  See Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 484 (5th Cir. 2008) (citing McCoy v. City of Shreveport, 492 F.3d 551, 557 (5th Cir. 2007)).  In the context of a retaliation claim, conduct is "materially adverse" if it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination" and while an objective test is applied,

"whether a particular action is materially adverse will depend on the context and circumstances of the particular case." <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68-69, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).  In the court's opinion, while a close question is presented, the incidents which Garner cites in support of his claim for retaliation arguably could be reasonably found to be materially adverse.  Therefore, the court will deny MEP's motion for summary judgment on Garner's claim for retaliation.

However, while these incidents may qualify as materially adverse so as to support his retaliation claim, the conduct referenced by Garner is not sufficiently severe and pervasive to support a reasonable finding that Garner was constructively discharged.  To prove constructive discharge, Garner must demonstrate "'working conditions ... so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'"  <u>Aryain</u>, 534 F.3d at 480 (quoting <u>Penn. State Police v. Suders</u>, 542 U.S. 129, 141, 124 S. Ct. 2342, 2342, 159 L. Ed. 2d 204 (2004)).  As the Fifth Circuit recently explained in <u>Nassar v. University of Texas Southwestern Medical Center</u>,

> Constructive discharge claims like the one [plaintiff has] brought are essentially hostile work environment claims but more extreme.  We therefore have required plaintiffs advancing constructive discharge claims to prove the existence of an aggravating factor.  <u>Brown v. Kinney Shoe Corp.</u>, [237 F.3d 556, 566 (5th Cir. 2001)].  Such factors include:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibility; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.
>
> Dediol [v. Best Chevrolet, Inc., 655 F.3d 435, 444 (5th Cir. 2011)].

674 F.3d 448, 453 (5th Cir. 2012). See also Dediol, 655 F.3d at 444 (explaining that a constructive discharge claim "requires a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment." (internal quotation marks omitted)).  As in Nassar, Garner has presented proof of none of these factors with the possible exception of "badgering, harassment, and humiliation."  However, as the court made clear in Nassar, the level of "badgering, harassment, and humiliation" required to establish constructive discharge is more than the minimum required to make out a claim of hostile work environment: There must be "sufficient proof to show that [Garner's] 'working conditions were so intolerable that a reasonable employee would feel compelled to resign.'" 674 F.3d at 453 (citing Dediol, 655 F.3d at 444).  Here, the record before the court does not establish the kind of severe or pervasive harassment required to establish a hostile work environment, much less the kind of "hostile work environment but more extreme" required to establish constructive discharge.  Thus, while plaintiff may have

8

subjectively felt compelled to resign, in the court's opinion, he has not created a genuine issue of material fact on whether he was subject to an objectively hostile work environment.

MEP also seeks summary judgment on plaintiff's state law claim for intentional infliction of emotional distress (IIED), contending the conduct of which he complains does not rise to the level of extreme and outrageous conduct required to sustain such a claim under Mississippi law.

> Under Mississippi law, the standard for IIED "is very high: the defendant's conduct must be 'wanton and wilful and [such that] it would evoke outrage or revulsion.'" Hatley v. Hilton Hotels Corp., 308 F.3d 473, 476 (5th Cir. 2002) (quoting Leaf River Forest Prods., Inc. v. Ferguson, 662 So. 2d 648, 659 (Miss. 1995)). "A Mississippi federal court defined the necessary severity as acts so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Speed v. Scott, 787 So. 2d 626, 630 (Miss. 2001). Employment disputes do not ordinarily sustain claims for IIED. Peques v. Emerson Elec. Co., 913 F. Supp. 976, 982-83 (N.D. Miss. 1996) ("Recognition of a cause of action for [IIED] in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time.") (citations omitted).

Cheatham v. Allstate Ins. Co., 465 F.3d 578, 586 (5th Cir. 2006). The court easily concludes plaintiff's evidence does not satisfy this exacting standard.

Based on the foregoing it is ordered that defendant's motion for summary judgment is granted in part and denied in part, as set forth herein.

ORDERED this 12th day of October, 2012.

```
                              /s/ Tom S. Lee
                              UNITED STATES DISTRICT JUDGE
```